1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERESA M. HENSLEY,                      No.  2:20-cv-1448-KJN

12                 Plaintiff,                ORDER ON PARTIES' CROSS MOTIONS
                                             FOR SUMMARY JUDGMENT
13        v.
                                             (ECF Nos. 23, 24)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits ("DIB").[1]  In her summary judgment

19   motion, plaintiff contends that the Administrative Law Judge ("ALJ") erred in assessing the

20   severity of her mental impairments and discounting her subjective symptom testimony, and that

21   remand is required to allow the ALJ to consider a post-hearing opinion by plaintiff's treating

22   podiatrist.  The Commissioner opposed, and filed a cross–motion for summary judgment.

23        The court DENIES plaintiff's motion for summary judgment, GRANTS the

24   Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

25   ///

26   ///

27
     ────────────────────
28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 9.)

1
## I.        BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

2          On March 28, 2016, plaintiff applied for DIB, alleging an onset date of January 1, 2016—

3 which she later amended to April 25, 2016.  (Administrative Transcript ("AT") 19, 169, 264.)

4 Plaintiff claimed disability due to bilateral foot fractures, chronic back pain, hypertension, morbid

5 obesity, PTSD, anxiety, depression, agoraphobia, and insomnia.  (AT 200, 264.)  Plaintiff's

6 application was denied initially and upon reconsideration.  (AT 19, 62-89.)  Plaintiff, aided by an

7 attorney, sought review of these denials with an ALJ.  (AT 106-07.)  The ALJ held a hearing on

8 February 14, 2019, where both plaintiff and a vocational expert testified.  (AT 34-61.)

9          On May 29, 2019, the ALJ issued a decision determining plaintiff was not disabled from

10 her amended onset date (April 25, 2016) through September 30, 2016, her date last insured.

11 (AT 16-33.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful

12 activity since April 25, 2016.  (AT 21.)  At step two, the ALJ determined plaintiff had the

13 following severe impairments:  degenerative disc disease, bilateral foot fractures, and obesity.

14 (Id.)  As relevant here, the ALJ simultaneously found plaintiff's alleged mental impairments were

15

---

16 [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social

17 Security program.  42 U.S.C. §§ 401 et seq.  Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental

18 impairment. . . ."  42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S.

19 137, 140—42 (1987).  The following summarizes the sequential evaluation:

20          **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
           claimant is found not disabled.  If not, proceed to step two.

21          **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
           three.  If not, then a finding of not disabled is appropriate.

22          **Step three**: Does the claimant's impairment or combination of impairments meet

23          or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
           claimant is automatically determined disabled.  If not, proceed to step four.

24          **Step four**:  Is the claimant capable of performing past relevant work?  If so, the
           claimant is not disabled.  If not, proceed to step five.

25          **Step five**:  Does the claimant have the residual functional capacity to perform any

26          other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

27 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The

28 Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    not severe.  (AT 22-23.)  At step three, the ALJ determined plaintiff's impairments did not meet

2    or medically equal the severity of an impairment listed in Appendix 1.  (AT 23) (citing 20 C.F.R.

3    Part 404, Subpart P, Appendix 1).  The ALJ then found plaintiff had the RFC to perform "light

4    work," except

5               she was unable to kneel or squat; she was unable to reach overhead;
             and she must have avoided uneven terrain as well as hazards such
6               as unprotected heights and dangerous moving machinery.

7    (AT 23.)  At step four the ALJ found plaintiff was unable to perform any past relevant work.

8    (AT 25.)  However, at step five the ALJ found there were still a significant number of jobs

9    available to plaintiff in the national economy.  (AT 26.)  Thus, the ALJ determined plaintiff was

10   not disabled.  (Id.)  The Appeals Council denied plaintiff's request for review and an additional

11   opinion from her podiatrist did not show a reasonable probability of changing the decision,

12   making the ALJ's decision the Commissioner's final decision.  (AT 1-6.)  Plaintiff then filed this

13   action requesting judicial review of the Commissioner's final decision; the parties filed cross–

14   motions for summary judgment.  (ECF Nos. 1, 23, 24.)

15   **II.**     **LEGAL STANDARD**

16          The court reviews the Commissioner's decision de novo, and should reverse "only if the

17   ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ

18   applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).

19   Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such

20   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

21   Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for

22   determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.

23   The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one

24   rational interpretation."  Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the

25   court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F. 3d at 1048.

26   **III.**    **ISSUES PRESENTED**

27          Plaintiff raises three issues in her motion for summary judgement:  (A) the ALJ erred at

28   step two by concluding that plaintiff's PTSD, agoraphobia, anxiety, depression, and insomnia

3

were non-severe impairments; (B) the ALJ erred in rejecting plaintiff's subjective symptom testimony; and (C) the ALJ's decision is not supported by substantial evidence given the contents of an RFC opinion from plaintiff's treating podiatrist that was submitted to the Appeals Council after the ALJ rendered his decision.  (ECF No. 23 at 6-17.)  Plaintiff seeks a remand for benefits, or for further proceedings.  (Id. at 17-18.)  For the reasons set forth below, the court concludes (A) the ALJ did not err in evaluating plaintiff's mental impairments at step two; (B) nor did the ALJ err in analyzing plaintiff's subjective symptom testimony; and (C) the additional evidence submitted to the Appeals Council does not provide a basis for remand.

## IV.   DISCUSSION

### A.  Step Two Severity of Mental Impairments

Plaintiff contends her mental impairments were more than mere slight abnormalities, satisfying the *de minimis* standard, and therefore should have been found "severe" at step two of the disability evaluation.  (ECF No. 23 at 7.)

#### Legal Standard

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments."  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). Under the Commissioner's regulations, an impairment or combination of impairments is deemed severe at step two if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1522(a).  An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (cleaned up).  "Step two is merely a threshold determination meant to screen out weak claims."  Buck, 869 F.3d at 1048-49; see Smolen, 80 F.3d at 1290 ("the step-two inquiry is a de minimis screening device to dispose of groundless claims" (cleaned up)).

Because plaintiff alleged disability, at least in part, due to mental impairments, the ALJ was required "to follow a special psychiatric review technique."  Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental

impairments, ALJs "must follow a special technique at each level in the administrative review process"). Under this technique, the ALJ must first determine whether plaintiff has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas: "[1] Understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(b)(2), (c)(3). The ALJ must rate the degree of limitation using a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). Third, the ALJ must use the ratings to determine the severity of the mental impairment. 20 C.F.R. § 404.1520a(d). If the ALJ rates the degrees of limitation as "none" or "mild," generally the impairment(s) are found "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation" in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

**Analysis**

Here, the ALJ found plaintiff's degenerative disc disease, bilateral foot fractures, and obesity were severe impairments—while finding she did not have any severe mental impairments prior to the date last insured. (AT 21-23.) The ALJ credited the opinions of the state agency reviewing mental health consultants who determined plaintiff's affective disorders were "Non Severe." (AT 22, 66, 86.) The ALJ gave "little weight" to a May 2016 statement from plaintiff's treating provider, Rebecca Perthel, PA-C, that plaintiff was "not capable of returning to work," finding it lacked objective support and was not entirely consistent with the provider's own progress notes reflecting normal mental status examinations. (AT 22, 1222.) The ALJ found plaintiff had only mild limitations in (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace, and no limitations in (3) interacting with others or (4) adapting or managing herself. (AT 22.)

Relying heavily on this court's previous decision in Few v. Comm'r of Soc. Sec., 2021 WL 1103706 (E.D. Cal. March 23, 2021), plaintiff argues the ALJ erred by failing to apply the proper *de minimis* standard in assessing plaintiff's mental limitations at step two. (ECF No. 23 at 10-11.) Plaintiff highlights the long overall span of time in which she was treated for mental

impairments of various types, from 2014 through 2018 based on the medical records provided, to argue that such an extensive longitudinal record cannot render her mental impairments merely "slight abnormalities." (Id. at 12.) See Webb, 433 F.3d at 686. The record confirms plaintiff experienced depression, anxiety, and altered mental state from both acute and chronic sources for many years. (See, e.g., AT 1382, 1384-89, 1438, 1440, 1447, 1449, 1465-67, 1469, 1759-60, 1765-66.) The problem is that—despite all of the surrounding medical records—plaintiff failed to provide objective evidence that these impairments were medically severe at any point during the narrow five-month window of alleged disability at issue in this application: from April 25, 2016, to September 30, 2016.[3]

The record overflows with documentation of plaintiff's hospital admissions for "altered mental status" from April 2014 to April 2015, suspected to be caused by long-acting opioids prescribed for pain management and unresolved bereavement from the death of her daughter in 2013. (See AT 529; see also AT 288-89, 311-13, 325, 366-69, 488-89, 500-02, 508-13, 518-33, 550-66, 579-84, 639-41.) Many of these records mention that plaintiff also had a history of depressive disorders. (See, e.g., AT 288, 500, 510, 1264.) However, plaintiff points the court to no recorded mental health treatment over the following year leading up to the April 25, 2016 amended onset date. The mental-health-related records resume on April 12, 2016, when plaintiff began counseling sessions with Focus & Balance to work on "issues of Acute [S]tress Reaction, Anxiety, and Depression." (AT 1152, 1213-218.) According to plaintiff's primary provider there, Ms. Perthel, the "predominating diagnosis" was for acute stress disorder "as a result of a trauma in 1/26/16." (AT 1222.) That trauma refers to plaintiff being stabbed in the abdomen by a patron on January 26, 2016 while she was working as a bus operator. (AT 21, 667.)

Within the five-month disability window, plaintiff directs the court to just three mental health treatment records, in addition to the May 2016 session with Ms. Perthel which the ALJ specifically discussed. (AT 22, citing 1222.) Plaintiff had another session with Ms. Perthel on

---

[3] Plaintiff—who is now represented by different counsel in this appeal—notes her alleged onset date was amended from January 1, 2016, to April 25, 2016, on the advice of counsel for an "unknown reason," and "perhaps mistakenly." (ECF Nos. 23 at 12, 25 at 2.)

July 12, 2016, indicating plaintiff's normal mental status examination, that her "[m]ood has some improvements," and that sleep was a major problem due to anxiety.  (AT 1223-29.)  Then on July 28, 2016, plaintiff had a counseling session with Janie Mares, CPC-S, at the State of Texas Department of Assistive and Rehabilitative Services, who noted plaintiff's current stressors were: "health problem," "financial issues," and "issues with former employer."  (AT 1146-48.)  Plaintiff returned to Ms. Mares on August 18, 2016, and showed similar stressors related to: "health problem," "financial issues," and "relationship issues."  (AT 1149-51.)  On both notes, Ms. Mares checked a box for "poor" prognosis toward employment readiness, with limited explanation.  (AT 1147 (noting only that "[c]urrent health issues prevent her from working at this time"), 1150.)

Plaintiff continued counseling at Focus & Balance through November 2016.  (AT 1229-34 (October 5, 2016), 1234-40 (November 2, 2016), 1240-45 (November 22, 2016).)  Shortly thereafter in December 2016, plaintiff moved to California with her husband to help her ailing mother.  (AT 43.)  The notes from her final session before leaving Texas to move to California reflect "Active Problems" of PTSD, anxiety disorder, agoraphobia, major depressive disorder, and insomnia.  (AT 1242-43.)  Plaintiff also discussed her November 12, 2016 hospitalization for "altered mental status," which hospital doctors suspected to be connected with opioid-induced respiratory failure—her first since the series of similar hospital admissions in April 2014 through April 2015—rather than plaintiff's mental impairments.  (AT 1240-41, 1263-64, 1268.)  Given that the hospitalization was connected to her various medications, the hospital doctors contacted all of plaintiff's providers to discuss medication use.  (AT 1263-64, 1268.)  By the time plaintiff met with Ms. Perthel at Focus & Balance on November 22, 2016, the assessment describes plaintiff's mood as "improved greatly" and states plaintiff is "working through her PTSD and anxiety naturally and ideally wants to get off all medication."  (AT 1244.)  Again, her mental status examination was normal.  (AT 1243.)

Plaintiff directs the court to no further mental health records until about seven months later, when plaintiff was seen in July 2017 by a doctor in California who noted plaintiff was "having more anxiety symptoms since she start[ed] to go back to work."  (AT 1765.)  Some nine months later, plaintiff's visit to the same doctor in March 2018 yielded no mention of any

1   depression or anxiety issues.  (AT 1762-64 (noting normal mental exam).)  The final mental-

2   health record plaintiff identifies is an October 2018 return visit to the same doctor where plaintiff

3   "[s]tated increases in anxiety with difficulty falling asleep at night," and she was diagnosed with

4   chronic depression and daily anxiety symptoms.  (AT 1760 (but with normal mental exam).)

5        Plaintiff is correct that, as a general proposition, records from outside of the alleged

6   disability period are still relevant to assessing a claimant's impairment during the period at issue.

7   See Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical evaluations made after the

8   expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration

9   condition."); see, e.g., Pirtle v. Astrue, 479 F.3d 931, 934 (8th Cir. 2007) (ALJs "may consider all

10  evidence of record, including medical records and opinions dated prior to the alleged onset date,"

11  when there is no evidence of deterioration or progression of symptoms); Gartland v. Colvin, 2015

12  WL 5695311, at *21 (M.D. Pa. Sept. 28, 2015) ("[T]he mere fact that evidence exists prior to

13  disability onset does not automatically mean that such evidence is not relevant.").  Even though

14  evidence of plaintiff's "condition prior to the onset date and after the insured date is to be

15  considered by the ALJ," however, "the period between onset of disability and expiration of

16  insured status is the focus of the inquiry."  Ward v. Shalala, 898 F. Supp. 261, 263 (D. Del. 1995).

17       Here, the records pre-dating plaintiff's onset date provide this court with little evidence of

18  plaintiff's mental impairments during the alleged disability period, given the year-long gap in

19  treatment preceding April 2016 when plaintiff sought treatment for the January 2016 stabbing

20  trauma.  See Waggener v. Astrue, 2009 WL 2139842, at *3 (D. Colo. July 15, 2009) (medical

21  evidence outside the disability period may be considered "to the extent it sheds light on the nature

22  and severity of plaintiff's condition during the relevant time period").  Likewise, the handful of

23  medical visits cited after plaintiff's date last insured are too few and far between—with

24  vacillating and internally inconsistent accounts of plaintiff's mental health—to shed light on the

25  severity of plaintiff's mental impairments almost a year earlier.  (AT 1759-65.)

26       Fundamentally, it is the claimant's burden at step two to demonstrate she has a medically

27  severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  Therefore, "it is incumbent

28  on the claimant to produce evidence of disability during the alleged disability period."  Rye v.

1    Colvin, 2016 WL 632242, at *6 (D. Vt. Feb. 17, 2016) (emphasis original).  Plaintiff here

2    provides plenty of evidence she was diagnosed with mental health problems before, during, and

3    after the alleged period of disability.  (See, e.g., AT 288, 500, 1152, 1223-29, 1242-44, 1760.)

4    However, diagnosis alone does not establish disability.  Matthews v. Shalala, 10 F.3d 678, 680

5    (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.");

6    Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly [has]

7    diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those

8    impairments are 'severe.'").

9         From within the narrow alleged period of disability, the best evidence of impaired

10   functionality plaintiff can offer is the May 2016 Assessment note by her treating physician's

11   assistant at Focus & Balance, Ms. Perthel, who stated plaintiff is "currently not capable of

12   returning to work" based on symptoms of depression, anxiety, panic disorder, and insomnia.

13   (AT 1221-22.)  However, this treatment note is not the sort of medical opinion an ALJ must even

14   consider in the first place, since it gives an ultimate conclusion of disability rather than

15   objectively describing the severity of the impairment.  See 20 C.F.R. §§ 404.1527(a)(1)

16   ("Medical opinions are statements from acceptable medical sources that reflect judgments about

17   the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

18   what you can still do despite impairment(s), and your physical or mental restrictions.") & (d)(1)

19   (explaining that a "statement by a medical source that you are 'disabled' or 'unable to work'" are

20   opinions on issues reserved to the Commissioner and do not constitute medical opinions).

21        By contrast, in Few, the ALJ at step two credited the state agency reviewing physicians'

22   opinions over a treating psychiatrist's opinion that the plaintiff's symptoms were "clearly still

23   severe," poor scores on objective mental health assessments, and corroborating medical records

24   from "[t]hroughout the claim period."  See 2021 WL 1103706, at *4.  It remains true "the

25   existence of contradictions between the opinions of consulting state-agency mental health

26   physicians and a treating psychiatrist is not a proper basis for rejecting a mental impairment at

27   step two."  Id.  However, plaintiff identifies no such contradiction at play in this case.

28        Finally, given the record contains insufficient evidence plaintiff had mental impairments

meeting the *de minimis* threshold during the disability period, the court need not address—for purposes of the step two argument—whether the ALJ properly determined plaintiff's mental symptoms improved by November 2016.  (See AT 22.)

**B.  Subjective Symptoms Testimony**

Plaintiff contends the ALJ erred in rejecting her subjective symptoms by failing to address the first step required in the analysis or, alternatively, by failing to provide clear and convincing reasons to reject her symptom testimony.  (ECF No. 23 at 14.)

**Legal Standard**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability.  20 C.F.R § 404.1529(a).  If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose.  See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014).  In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of

"specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

**Analysis**

Plaintiff initially argues the ALJ failed to determine if plaintiff's impairments could be expected to produce the symptoms she described—the first step in the subjective symptom analysis.  (ECF No. 23 at 14.)  See Revels, 874 F.3d at 655.  Despite plaintiff's contention, the ALJ did perform the first step of the symptom analysis by stating:  "When considering the factors in Social Security Ruling 16-3p, there is evidence consistent with claimant's allegations."  (AT 23.)  See SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017) (The ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.").  Although the ALJ did not use the specific language plaintiff delineates, it is clear from the ALJ's acknowledgment of consistent evidence supporting plaintiff's allegations that he found her impairments could be expected to produce the alleged symptoms.  See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." (cleaned up)).

Alternatively, plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's symptom testimony.  (ECF No. 23 at 14-16.)  Plaintiff primarily argues that the ALJ used a lack of medical evidence as the sole basis to discount plaintiff's symptom testimony.  (ECF No. 23 at 15.)  In actuality, the ALJ also relied on improvements to plaintiff's conditions with treatment and lifestyle changes.  (AT 23-27.)  See Tommasetti, 533 F.3d at 1040.

11

Related to plaintiff's mental impairments, plaintiff testified she sleeps poorly and lacks motivation to leave the house due to her pain, PTSD, depression, and panic disorder.  (AT 22-23, 47-49.)  The ALJ acknowledged that plaintiff was diagnosed with and treated for several mental health problems; however, he noted that progress notes from the relevant time period often indicated normal mental status examinations.  (AT 22, 1213-45.)  Medical evidence is a relevant factor to determine the severity of plaintiff's pain and its disabling effects.  See Rollins, 261 F.3d at 857.  Aside from the medical evidence, the ALJ cited to improvements to discount plaintiff's subjective symptom testimony regarding her mental impairments.  (AT 22.)  Several treatment records from November 2016 indicate Ms. Perthel found plaintiff's mood improved "greatly" due to "lifestyle changes," and plaintiff was "working through her PTSD and anxiety naturally and ideally wants to get off all medication," including pain, anxiety, and sleeping medication.  (AT 1234-44.)  See 20 C.F.R § 404.1529(c)(3)(v) (the ALJ may consider the effectiveness of treatments other than medication); see, e.g., Baker v. Saul, 836 Fed. App'x 526, 530-31 (9th Cir. 2020) ("Identifying improvement in [the claimant]'s medical and mental condition and pointing to evidence demonstrating the change" is "clear and convincing" reasoning).

Of course, "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental-health conditions, and it would be error for the ALJ to "pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  Garrison, 759 F.3d at 1017.  However, as discussed regarding the step-two issue, in this case plaintiff provides few subsequent records demonstrating a resurgence of depression, anxiety, and PTSD symptoms and none within the disability period at issue.  Plaintiff's November 12, 2016 hospitalization for another episode of "altered mental status" connected with opioid-induced respiratory failure (mentioned above) does not change the analysis.  (See AT 1263-64.)  As plaintiff herself acknowledges, the November 2016 hospitalization was "caused by the interaction between her pain medication and her anti-anxiety medication."  (ECF No. 25 at 4 n.2 (emphasis omitted).)  This record does not demonstrate a deterioration in plaintiff's overall mental health, compared to the positive improvements her Focus & Balance clinician noted both before and after the hospitalization.  (See

12

1    AT 1235-38 (11/2/16), 1240-45 (11/22/16).)

2          With respect to plaintiff's physical conditions, plaintiff testified to intense back, knee, and

3    foot pain to the point she must elevate her feet, has difficulty dressing, and uses a cane when

4    grocery shopping.  (AT 23, 41-46.)  The ALJ explained plaintiff's history of back pain stemming

5    from a work-related injury, citing to several records from 2010 through the date last insured

6    (September 30, 2016).  (AT 22, citing AT 759-920, 1208, 1305-10, 1559-77.)  While evidence

7    exists to support plaintiff's allegations, the ALJ explained "the evidence is not entirely

8    consistent" with plaintiff's allegations.  (AT 24.)  The ALJ first discounted plaintiff's back pain

9    based on medical evidence from September 2016 progress notes indicating "normal gait and

10   station, 5/5 muscle strength throughout, intact sensation, and normal reflexes." (Id., citing AT

11   1201).  See Rollins, 261 F.3d at 857 ("[M]edical evidence is still a relevant factor in determining

12   the severity of the claimant's pain and its disabling effects.").

13          Next, the ALJ discounted plaintiff's back pain due to its documented improvement.

14   (AT 23-24.)  The ALJ noted that on October 27, 2016, plaintiff had her spinal neurostimulator

15   replaced after the original stopped working.  (AT 24, citing AT 1211; see AT 1116, 1200.)  The

16   ALJ found plaintiff had an "[u]ncomplicated post-op course" with overall "good" results to where

17   plaintiff had "almost completely weaned off pain medication."  (Id., citing AT 1208, 1235, 1238).

18   See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[A] medical condition that can

19   reasonably be remedied either by surgery, treatment, or medication is not disabling."); see, e.g.,

20   Cox v. Berryhill, 2017 WL 3172984, at *5 (E.D. Cal. July 26, 2017) ("The ALJ's finding that

21   Plaintiff's improvement with medication and treatment undercut Plaintiff's allegations of total

22   disability was a legally sufficient basis to reject the extent of Plaintiff's symptom testimony.").

23          The ALJ's improvement reasoning is further supported by his finding that plaintiff told

24   her pain management provider on November 18, 2016, that she had excellent relief from her

25   stimulator.  (AT 24, citing AT 1554.)  Plaintiff contends the ALJ inaccurately characterized this

26   pain management report because it also states plaintiff was ambulating with an orthopedic boot

27   on her right foot and diminished leg reflexes.  (ECF No. 23 at 16 (citing Holohan v. Massanari,

28   246 F.3d 1195, 1208 (9th Cir. 2001).)  In Holohan, the Ninth Circuit reversed an ALJ's

13

discounting of the claimant's mental health symptoms where the ALJ "selectively quoted from [the treating psychiatrist]'s records," exaggerated their contents, and "misattributed statements to him." 246 F.3d at 1205, 1208. The court found the psychiatrist's records provided "no support for the ALJ's credibility finding." Id. at 1208. Here, however, the pain management report and related records do support the ALJ's findings, which contain none of the egregious mischaracterizations addressed in Holohan. Despite plaintiff's wearing of a boot (following her September 2016 foot surgery, AT 1174-75) and poor leg raises and reflexes, plaintiff still reported at the same visit a pain intensity of "2 today on a 10 point scale." (AT 1551-52.) And the report does say what the ALJ found it said, unlike in Holohan. (See AT 1554 ("The patient is experiencing excellent relief from her bursts mode SCS.").) Further, as the ALJ also noted, plaintiff reported to another doctor just three days later, on November 21, 2016, that the stimulator "has 'worked miracles' on managing her pain." (AT 1578, see AT 24.) Plaintiff does not demonstrate a reversible mischaracterization of the evidence by the ALJ in finding plaintiff's back pain sufficiently improved with the stimulator replacement to discount her testimony. See, e.g., Soto-Marquez v. Berryhill, 2018 WL 3583064, *17 (E.D. Cal. July 24, 2018) (record supported the ALJ's finding that plaintiff's chronic pain allegations conflicted with plaintiff's statements to doctors that she was "very happy" with the results of her surgery).

The replacement of plaintiff's stimulator appears to have improved both plaintiff's back and foot pain. Plaintiff's treating podiatrist, Dr. Dennis Martin Chaney, DPM, noted nine days later (on November 30, 2016) that plaintiff experienced "great reduction in pain" from both the new stimulator and the recent foot surgery. (AT 1186.) The reduction was so significant that Dr. Chaney also recorded that plaintiff "has less pain now than she [has] ever had in the past." (Id.) See Warre, 439 F.3d at 1006 ("[A] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). Regarding plaintiff's foot pain, the ALJ recognized plaintiff's history of bilateral foot injuries and surgeries since 2010, with the most recent surgeries (on both feet) on September 20, 2016. (AT 24, citing AT 760, 1172, 1174, 1308.) However, the ALJ noted that plaintiff's left ankle instability was repaired with "normal healing." (AT 24-25, citing AT 1127 (Dr. Chaney 3/11/16 progress note).) In October 2015,

1    plaintiff fractured her right foot.  (AT 1116.)  As noted by the ALJ, the September 2016 surgeries

2    included revision arthrodesis (a bone fusion technique) (AT 24, 1174), and July 2017 x-rays

3    showed the impacted bones remained fused.  (AT 25, citing AT 1751.)  These records constitute

4    objective medical evidence the ALJ could properly use to discount plaintiff's testimony regarding

5    her foot pain.  See Rollins, 261 F.3d at 857.  Plaintiff points to June 2016 records indicating that

6    she had trouble rising from a seated position and difficulty using her feet.  (ECF No. 25 at 5,

7    citing AT 1116-19.)  However, this treatment note was before plaintiff's September 2016 foot

8    surgeries, which (as described above) provided plaintiff with "quite a bit of pain relief."

9    (AT 1183.)

10            Plaintiff also ascribes error to the ALJ's statement that plaintiff "reported doing well after

11    her surgeries until she started a new job in July 2017 that required 'standing on concrete all day.'"

12    (AT 25, quoting AT 1749; see ECF No. 23 at 15.)  Plaintiff argues that this was a failed attempt

13    to resume work, which supports her disability claim, and which the ALJ could not use as a reason

14    to discount her foot pain testimony.  (ECF No. 23 at 15.)  See Lingenfelter v. Astrue, 504 F.3d

15    1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a

16    short period of time and, because of his impairments, failed, that he did not then experience pain

17    and limitations severe enough to preclude him from maintaining substantial gainful

18    employment.").  The court does not read that sentence to mean that the ALJ discounted plaintiff's

19    foot pain testimony because she tried and failed to return to work in July 2017—almost one year

20    after the date last insured.  Indeed, returning to work after the alleged disability period would lend

21    little support for rejecting a claimant's testimony that her symptoms precluded her from working

22    during the alleged disability period.  See Lingenfelter, 504 F.3d at 1039 (noting that work attempt

23    after disability period "provides even less support for rejecting Lingenfelter's testimony that his

24    subjective symptoms precluded him working during the relevant time period").  Rather, the court

25    views this sentence as focusing on plaintiff's report of having done well for a good period of time

26    (during the disability period) after her multiple surgeries on her right foot, which lasted until July

27    ////

28    ////

1   2017 when she tried this new job.[4]

2       Accordingly, the court rejects plaintiff's assignments of error as to her subjective

3   symptom testimony.

4   **C.  Evidence Submitted to Appeals Council**

5       Lastly, plaintiff argues that the ALJ's decision is not supported by substantial evidence

6   given the contents of an RFC opinion from Dr. Chaney (her longtime treating podiatrist), which

7   she submitted to the Appeals Council after the ALJ rendered his decision.  (ECF No. 23 at 16-17.)

8       <u>Legal Standard</u>

9       When a claimant submits evidence to the Appeals Council that an ALJ did not consider,

10  and the Appeals Council "considers" that new evidence in deciding whether to review the ALJ's

11  decision, "that evidence becomes part of the administrative record, which the district court must

12  consider when reviewing the Commissioner's final decision for substantial evidence."  <u>Brewes v.</u>

13  <u>Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir. 2012).  The question on appeal to the

14  district court is "whether, in light of the newly submitted evidence, the ALJ's decision remains

15  supported by substantial evidence; whether it is still the case that 'a reasonable mind' would find

16  there is enough evidence to support the ALJ's decision even if the additional evidence had been

17  considered."  <u>Lukesic v. Saul</u>, 2021 WL 1105155, at *4 (E.D. Cal. Mar. 23, 2021) (quoting

18  <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 115 (2019) (explaining substantial evidence standard)).

19      **<u>Analysis</u>**

20      After the February 14, 2019 hearing on plaintiff's claim, the ALJ issued his decision to

21  deny disability benefits on May 29, 2019.  (AT 19-27.)  Plaintiff's attorney requested Appeals

22  Council review of that decision on July 30, 2019.  (AT 156-58.)  After an extension of time,

23  plaintiff's attorney submitted new evidence to the Appeals Council:  a functional opinion

24  questionnaire from Dr. Chaney, dated September 16, 2019.  (AT 7-10.)  On the Physical

25

26  [4] It is unclear what the job was.  The only reference to this job appears in the medical notes from
    plaintiff's July 17, 2017 initial visit to a new podiatrist in California, which the ALJ cites.

27  (AT 1749-51.)  The Subjective section of the note states, as relevant, that plaintiff had multiple
    surgeries on her right foot and "had done ok until she recently started a new job and was standing

28  on concrete all day. After 2 days she had significant pain and swelling."  (AT 1749.)

Assessment Form submitted, Dr. Chaney provided his treating opinions regarding plaintiff's foot injuries and her standing and walking abilities, which materially conflict with the "light" exertional RFC assigned by the ALJ.  (Id.)

On May 27, 2020, the Appeals Council denied plaintiff's request for review.  (AT 1-6.) The Notice of Appeals Council Action states:  "We considered the reasons [that you disagree with the ALJ's decision] and exhibited them on the enclosed Order of the Appeals Council."  (AT 1.) The Notice acknowledges the submission of Dr. Chaney's September 2019 opinion as additional evidence but states:  "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence."  (AT 2.)  The accompanying Order of Appeals Council states, in its entirety:

> The Appeals Council has received additional evidence, which it is making part of the record. That evidence consists of the following exhibits:
>
> Exhibit 17B   Request for Review of Hearing Decision dated July 30, 2019 (3 pages)

(AT 5.)  Dr. Chaney's September 2019 opinion does not appear on the Appeals Council exhibit list, although it is included in the Administrative Transcript prepared for this court.

Plaintiff argues that the Appeals Council considered Dr. Chaney's opinion and made it part of the administrative record, so the court now must take Dr. Chaney's opinion into account in assessing whether the Commissioner's decision is supported by substantial evidence.  (ECF No. 23 at 17 (citing Brewes).)   Plaintiff requests a remand so the ALJ can decide in the first instance what weight to give Dr. Chaney's opinion, as it is the only RFC assessment from a treating or examining doctor.  (Id.)

The Commissioner argues, primarily, that the court "should find [p]laintiff's argument related to [Dr. Chaney's] questionnaire was waived" because (a) plaintiff did not solicit an opinion from Dr. Chaney until after the ALJ's unfavorable decision, despite Dr. Chaney having treated plaintiff for many years before the ALJ hearing, and (b) plaintiff's attorney previously told th ALJ that the record was complete.  (ECF No. 24 at 13-14.)  Alternatively, the Commissioner

1    argues that Dr. Chaney's opinion does not eliminate the substantial evidence supporting the

2    ALJ's decision.  (Id. at 14-15.)

3                 *i.*     <u>No Waiver</u>

4       The Commissioner acknowledges the holding in <u>Brewes</u> that courts must consider new

5    evidence that the Appeals Council considered in deciding whether to review the ALJ's decision.

6    <u>See</u> 682 F.3d at 1163.  However, the Commissioner asks the court to adopt a "waiver" rule that

7    <u>Brewes</u> does not apply—and thus the court need not consider new evidence submitted to the

8    Appeals Council—"when the claimant affirms to the ALJ that the record is complete and ready

9    for decision."  (ECF No. 24 at 14, citing AT 281.)

10       The Commissioner's waiver theory is unavailing, as this is not a circumstance where

11    plaintiff is attempting to raise a new <u>argument</u> on appeal to this court without first presenting that

12    argument at the agency level.  Rather, plaintiff simply posits that the new <u>evidence</u> presented to

13    the Appeals Council changes the substantial-evidence calculus in this court.  The Commissioner

14    cites <u>Meanel v. Apfel</u>, where the Ninth Circuit held that "at least when claimants are represented

15    by counsel, they must raise all issues and evidence at their administrative hearings in order to

16    preserve them on appeal."  172 F.3d 1111, 1115 (9th Cir. 1999), <u>as amended</u> (June 22, 1999).

17    Despite <u>Meanel</u>'s reference to "hearings," its holding arose from the claimant's failure to present

18    new job-availability statistics "at both her hearing before the ALJ and the Appeals Council."  <u>Id.</u>

19    The Commissioner does not cite—nor is the court aware of—any case relying on <u>Meanel</u> to

20    conclude that a plaintiff "waived" judicial consideration of new evidence submitted to the

21    Appeals Council.  <u>Smith v. Saul</u> (which the Commissioner cites), and the cases cited therein,

22    apply <u>Meanel</u> to find a failure to preserve the <u>issue</u> of whether the ALJ <u>failed to develop the</u>

23    <u>record</u> when the claimant's attorney specifically stated earlier that the record was complete.  2020

24    WL 6305830, at *6–7 (E.D. Cal. Oct. 28, 2020) (citing <u>Howard v. Astrue</u>, 330 F. App'x 128, 130

25    (9th Cir. 2009); <u>Ryan Patrick A. v. Berryhill</u>, 2019 WL 1383800, at *7 (C.D. Cal. Mar. 27, 2019);

26    <u>Valdez v. Berryhill</u>, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018)).  These cases provide no

27    basis to find a so-called waiver of new evidence that was submitted to the Appeals Council.

28       Nevertheless, the court agrees with the Commissioner's underlying position that the

1  <u>Brewes</u> rule does not apply in these circumstances because the Appeals Council did not in fact

2  "consider" Dr. Chaney's post-decision RFC opinion or make it "part of the administrative

3  record."  <u>See</u> 682 F.3d at 1163 ("[W]hen the Appeals Council <u>considers</u> new evidence in deciding

4  whether to review a decision of the ALJ, that evidence becomes part of the administrative record,

5  which the district court must consider when reviewing the Commissioner's final decision for

6  substantial evidence." (emphasis added)).

7          There is much case law grappling with how to determine whether the Appeals Council

8  "considered" newly presented evidence.  The parties address none of these cases, with plaintiff

9  flatly arguing that the Appeals Council did consider Dr. Chaney's opinion, and the Commissioner

10  arguing that it did not.  The court's independent review indicates that the Appeals Council did not

11  "consider" Dr. Chaney's September 2019 opinion.

12                  <i>ii.</i>      <u>Standards for Consideration of New Evidence</u>

13          As relevant here, the applicable DIB regulation provides that the Appeals Council "will

14  review a case if . . . [s]ubject to paragraph (b) of this section, the Appeals Council receives

15  additional evidence that is new, material, and relates to the period on or before the date of the

16  hearing decision, and there is a reasonable probability that the additional evidence would change

17  the outcome of the decision."  20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017).[5]

18  Paragraph (b), in turn, provides that "[t]he Appeals Council will only consider additional

19  evidence under paragraph (a)(5) of this section if you show good cause for not informing us about

20  or submitting the evidence" in time for the ALJ to consider it.  20 C.F.R. § 404.970(b) (listing

21  non-exhaustive examples of good cause); <u>see</u> 20 C.F.R. § 404.935 (governing submission of

22  written evidence to ALJ).  Taken together, then, "the Appeals Council <u>must</u> consider additional

23  evidence that was not before the ALJ if:  1) [paragraph (b)] is satisfied, i.e., good cause is shown;

24  2) the additional evidence is new, material, and relates to the period up to and before the date of

25  the ALJ's decision; and 3) 'there is a reasonable probability' the ALJ's decision would have been

26  different if the ALJ had the additional evidence."  <u>Matias v. Saul</u>, 2021 WL 531238, at *5

27  _____

28  [5] Minimal amendments to paragraph (a) of this regulation, effective December 16, 2020, left this
    language unchanged.

1     (D. Haw. Feb. 12, 2021).

2          Importantly, "the word 'considered' has become a term of art in Social Security cases."

3     Schenone v. Saul, 2019 WL 2994492, at *6 (E.D. Cal. July 9, 2019).  Again, "when the Appeals

4     Council considers new evidence in deciding whether to review a decision of the ALJ, that

5     evidence becomes part of the administrative record, which the district court must consider" as

6     part of its appellate review.  Brewes, 682 F.3d at 1163 (emphasis added).  In contrast, where "the

7     Appeals Council only looked at the evidence, and determined it did not meet the [regulation's]

8     standard for consideration," then "the new evidence did not become part of the record, and [the

9     court] may not consider it."  Amor v. Berryhill, 743 F. App'x 145, 146 (9th Cir. 2018) (emphasis

10    added) (citing SSI regulation § 416.1470, identical to DIB regulation § 404.970, and Lowry v.

11    Barnhart, 329 F.3d 1019, 1024 (9th Cir. 2003)).  See Guzman v. Kijakazi, 2021 WL 6062645,

12    at *3 (E.D. Cal. Dec. 22, 2021) (noting Ninth Circuit distinguishing "between evidence the

13    Appeals Council 'considered' and evidence the Appeals Council merely 'looked at' to determine

14    whether the additional evidence was incorporated into the record."); Norman v. Saul, 2019 WL

15    4803220, at *3 (D. Alaska Oct. 1, 2019) ("[I]f the Appeals Council only looked at the new

16    evidence, it is not part of the record."); Schenone, 2019 WL 2994492, at *6.

17         Given the critical nature of whether the Appeals Council "considered" the additional

18    evidence at issue, preferably the Appeals Council would address in its decision all three

19    components of the applicable regulation (20 C.F.R. § 404.970 for DIB claims) and clearly state

20    whether it did or did not consider the additional records.  See Matias, 2021 WL 531238, at *5

21    (good cause, new/material/related to period, and reasonable probability of changing outcome).

22    Regrettably, as here, that is not always the case.

23              iii.     Application to this Case

24         In this instance, addressing the additional evidence in its Notice of Appeals Council

25    Action, the Council stated:

26              You submitted records from D. Martin Chaney, DPM dated
27              September 16, 2019 (3 pages). We find this evidence does not show
              a reasonable probability that it would change the outcome of the
              decision. We did not exhibit this evidence.
28

(AT 2.)  This statement does not convey the Council's determination as to good cause for the delayed submission or the relatedness of the record; nor does it clearly state whether the Council "considered" Dr. Chaney's records.

The somewhat opaque final two sentences from the Appeals Council are a less common variation of the Council's boiler language, which more typically states that the Council "did not consider and exhibit" the evidence.  See Vahey v. Saul, 2019 WL 3763436, at *9 n.11 (D. Haw. Aug. 9, 2019) (contrasting with previous cases, and noting unawareness of any other in-circuit cases, at that time, where the Appeals Council said only that it "did not exhibit" the evidence). Courts dealing with a similar lack of clarity from the Council interpret its language in a variety of ways with regard to whether the Council "considered" or merely "looked at" the evidence in question.  See id. at *7-8 (collecting and discussing numerous cases).  In Vahey, facing "nearly 200 pages of highly-relevant treatment notes" submitted to the Appeals Council, the court determined that it simply could not tell whether the Council found good cause for the late submission, and whether it "considered" the records.  Id. at *7, *9-10.  Accordingly, Vahey found remand to be "the only option."  Id. at *10.

This court echoes the sentiment that "[t]he Appeals Council would do well in future cases to clearly state whether it has 'considered' new evidence submitted to it or whether it has merely 'looked at' such evidence, rather than continuing to use the ambiguous language present in this case."  Norman v. Saul, 2019 WL 4803220, at *3 (D. Alaska Oct. 1, 2019) (reviewing identical two sentences from Appeals Council but remanding for unrelated error at Step Two).

However, the court finds the Appeals Council's decision in this case more discernible than did the courts in Norman and Vahey.  The Appeals Council notice stated that it "considered the reasons [for disagreement with the ALJ's decision] and exhibited them on the enclosed Order of the Appeals Council."  (AT 1.)  The only item exhibited on the Order of Appeals Council was plaintiff's Request for Review.  (AT 5.)  This strongly suggests that no other exhibits, i.e., Dr. Chaney's opinion, were "considered."  See Vahey, 2019 WL 3763436, at *9 n.11 (noting that "had the Council 'considered' the evidence, presumably they would have exhibited it").  Thus, it is sufficiently inferable from the Appeals Council's statement that it "did not exhibit"

1  Dr. Chaney's opinion that it did not "consider" his opinion within the meaning of Brewes and

2  § 404.970.

3      The fact that the Appeals Council stated the opinion would not likely change the outcome

4  of the ALJ's decision does not dictate a different conclusion.  As one court put it in analyzing the

5  same two sentences provided in this case, "[i]t is well within the Appeals Council's ability:  to

6  look at additional evidence to determine whether the evidence should be part of the record; but, if

7  the council determines the evidence is not properly before it, to decide whether or not to review

8  the ALJ's decision without relying on the additional evidence."  Matias, 2021 WL 531238, at *5

9  n.10 (emphasis added) (acknowledging split from Vahey).  It appears sufficiently plain to the

10 undersigned that the Appeals Council looked at Dr. Chaney's opinion just enough to conclude

11 that it was not reasonably likely to change the ALJ's decision and therefore did not further

12 "consider it" or make it "part of the administrative record" as contemplated in Brewes, 682 F.3d

13 at 1163.  See Garcia v. Saul, 2021 WL 223205, at *3 (E.D. Cal. Jan. 22, 2021) (interpreting

14 identical two Appeals Council notice sentences to mean the Council "did not consider the

15 evidence but merely looked at it"; Matias, 2021 WL 531238, at *5 (same); Guzman, 2021 WL

16 6062645, at *3 (interpreting Appeals Council statement that it "did not exhibit this evidence" to

17 mean the Council "did not consider the evidence but merely looked at it").

18     Further, the physical inclusion of Dr. Chaney's opinion in the Administrative Transcript

19 transmitted to this court does not mean that the Appeals Council considered it and made it "part

20 of the administrative record."  The only additional evidence that the Appeals Council stated it was

21 "making part of the record" was plaintiff's request for review.  (AT 5 (listing the additional

22 evidence that the Council received and "is making part of the record").)  Accordingly,

23 Dr. Chaney's opinion appears under the "Court Transcript Index" but not under the "Exhibits"

24 list.  (ECF No. 16.22 at 2-5.)  Had the opinion been exhibited and affirmatively made a part of the

25 record, that would demonstrate the Appeals Council had considered it.  See Garcia, 2021 WL

26 223205, at *4 (finding no error by the Appeals Council "in merely looking at the evidence and

27 not incorporating it as exhibits into the administrative record" (emphasis added)).  Here, the

28 Appeals Council determined the opinion did not meet the standard for consideration, see

1  20 C.F.R. § 404.935(b); therefore it "did not become part of the record, and [this court] may not

2  consider it." Amor, 743 F. App'x at 146.

3       Plaintiff cites two cases in which the court remanded for the ALJ to review the opinions of

4  treating physicians later provided to the Appeals Council.  However, in each of those cases the

5  new opinions were actually considered by the Appeals Council in denying review, as confirmed

6  by their inclusion as exhibits.  See Feil v. Comm'r of Soc. Sec., No. 2:14-CV-2276-TLN-CMK-

7  PS, 2017 WL 931888, at *6 (E.D. Cal. Mar. 9, 2017) ("The Appeal[s] Council accepted and

8  considered the new evidence by Dr. Dhillon when reviewing the ALJ's decision."); No. 2:14-CV-

9  2276, ECF No. 11.3 at 6 (Order of Appeals Council listing Dr. Dillon's questionnaire as exhibit

10  that it "is making part of the record"); Marchel v. Colvin, No. 2:13-CV-1416 DAD, 2015 WL

11  546065, at *4 (E.D. Cal. Feb. 10, 2015) (stating that doctor's opinion "was considered by the

12  Appeals Council"); No. 2:13-CV-1416, ECF No. 12.3 at 6 (Order of Appeals Council listing

13  additional doctor's opinions as exhibits that it "is making part of the record").

14       Finally, to the extent plaintiff's briefing can be read to argue that the Appeals Council

15  erred in merely looking at Dr. Chaney's opinion and not incorporating it as an exhibit into the

16  administrative record, she fails to show good cause for the opinion's late submission.  See

17  20 C.F.R. § 404.935(b) (making "good cause" one of the three requirements for Appeals Council

18  consideration of new evidence); Guzman, 2021 WL 6062645, at *3 ("Because the Appeals

19  Council did not consider the evidence but merely looked at it, the documents submitted were not

20  incorporated into the administrative record subject to the Court's review, unless Plaintiff carries

21  the burden to demonstrate the evidence should have been considered." (emphasis added)).

22       Plaintiff does not attempt to explain why she only provided Dr. Chaney's functional

23  assessment seven months after the ALJ hearing and some four months after the ALJ rendered his

24  adverse decision.  Dr. Chaney was her treating podiatrist, whom she saw regularly from at least

25  2014 through November 2016 (one month beyond her date last insured).  (See, e.g., AT 784,

26  1186.)  Although plaintiff then moved out of state, plaintiff filed her DIB claim in March 2016

27  while in Texas and under Dr. Chaney's care, and there is no reason to think she could not have

28  obtained his formal assessment at some point over the next three years leading up to the ALJ

hearing.  Moreover, in the course of the proceedings before the ALJ, plaintiff's attorney never suggested that Dr. Chaney's opinion was being requested and instead expressly told the ALJ on March 26, 2019—after obtaining other outstanding records—that the "record is now complete and ready for adjudication."  (AT 281.)  Thus, even assuming plaintiff had argued good cause here, the record would not support that argument.  See Erskine v. Kijakazi, 2022 WL 561511, at *9-11 (M.D.N.C. Feb. 24, 2022) (finding no good cause for late-submitted evidence, despite Appeals Council not citing lack of good cause as basis for rejecting evidence, where plaintiff's counsel never mentioned the new opinion evidence, stated the record was complete, and had at least 2 years to timely obtain the opinion from the provider).

Because Dr. Chaney's opinion was not made part of the record and was not considered by the Appeals Council—and plaintiff does not demonstrate good cause for the late submission—the court is not at liberty to consider its impact on substantial evidence review.  See Amor, 743 F. App'x at 146.

V.   **CONCLUSION**

Having resolved plaintiff's claims of error, the court finds the ALJ's decision supported by substantial evidence in the record as a whole.  Buck, 869 F.3d at 1048.  Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 23) is DENIED;

2.   The Commissioner's cross-motion (ECF No. 24) is GRANTED;

3.   The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and

4.   The Clerk of Court shall CLOSE this case.

Dated:  March 25, 2022

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

hens.1448